TYSON, Judge.
*309 Anton Thurman McAllister ("Defendant") appeals by petition for writ of certiorari from a judgment entered after a jury's conviction of one count of habitual misdemeanor assault. We find no error.
I. Background
Defendant met the victim, Stephanie Leonard, at a drug treatment facility group session in Winston-Salem. Soon after they met, Defendant moved into Ms. Leonard's apartment.
*310 On the evening of 16 February 2015, Defendant and Ms. Leonard jointly consumed a large bottle of wine at a table inside Ms. Leonard's apartment. Around 9:00 p.m., they decided to walk to a nearby BP gas station to purchase cigarettes. Before arriving at the BP gas station, Ms. Leonard decided she *540 wanted more wine and the pair began walking towards another store.
At this point, Defendant realized Ms. Leonard had not disclosed to him that she had money. Ms. Leonard testified that Defendant hit her in the face and knocked her to the ground, causing her to lose her wallet in the fall. Ms. Leonard got up and began to walk back towards the BP station. Defendant continued to strike her in the face. A cashier at the BP heard the struggle and saw Defendant "jerk" Ms. Leonard around outside of the store. The cashier called the police. Winston-Salem police responded to the call, but did not find Defendant or Ms. Leonard. An officer recovered Ms. Leonard's wallet and identification card at the scene.
The couple eventually returned to Ms. Leonard's apartment. Ms. Leonard testified that her face was bleeding and Defendant continued to hit her and drag her around the apartment. During the struggle, as Ms. Leonard struck at Defendant, her fingers entered his mouth and his fingers entered hers. Ms. Leonard testified that she bit Defendant's fingers and he bit her fingers back. At some point during the altercation, Ms. Leonard got into the bathtub. Defendant washed blood off of her body and splashed the blood-water mixture onto the walls.
Ms. Leonard went into her bedroom. Defendant attempted to force Ms. Leonard to perform fellatio. Defendant and Ms. Leonard then engaged in sexual intercourse and both fell asleep.
The next day, 17 February, Winston-Salem police arrived at the BP station to meet Ms. Leonard and investigate the assault. Officer P.M. Felske testified he observed Ms. Leonard's "cut lip and swollen lip and that it appeared that she had been assaulted." Law enforcement officers also entered and examined Ms. Leonard's apartment. Officer Christopher Ingram observed and photographed Ms. Leonard's injuries and the blood stains the officers had observed in the apartment, on the floor of the bathroom and walls of the bathtub.
Officer J.A. Henry collected a security video recorded at the BP station on 16 February and observed Defendant present in the area of that same BP on the evening of 17 February. Defendant agreed to go to the police department to speak with officers about an unrelated incident. At the police station, Defendant agreed to discuss the incident between *311 himself and Ms. Leonard. Defendant purportedly admitted he had pushed Ms. Leonard and engaged in other physical contact.
Defendant was indicted for habitual misdemeanor assault and charges of second-degree rape, second-degree sex offense, and assault by strangulation.
On 22 August 2016, the jury returned verdicts finding Defendant guilty of assault on a female, the underlying felony for habitual misdemeanor assault, and not guilty of all the other offenses. Defendant admitted to the predicate misdemeanor assault convictions for habitual misdemeanor assault. The trial court entered judgment sentencing Defendant to a term of 15 to 27 months imprisonment for habitual misdemeanor assault.
Defendant failed to file a notice of appeal. On 19 July 2017, Defendant filed a pro se "Motion to Modify and Terminate Sentence for Ineffective Assistance of Counsel." The trial court treated Defendant's motion as a motion for appropriate relief ("MAR") and denied the motion without an evidentiary hearing.
Defendant filed a petition for writ of certiorari with this Court on 11 August 2017. By order entered 29 August 2017, this Court allowed the petition "for the purpose of reviewing the judgment entered ... on 22 August 2016."
On 17 October 2018, Defendant filed an appellate brief, and at the same time filed a second petition for writ of certiorari seeking review of the trial court's 27 July 2017 order denying the MAR. The second petition was referred to this panel for consideration.
II. Jurisdiction
This Court reviews Defendant's criminal conviction by writ of certiorari granted on 29 August 2017 pursuant to N.C. Gen. Stat. § 15A-1422(c)(3) (2017).
*541 III. Issue
Defendant asserts his counsel conceded his guilt to the offense of habitual misdemeanor assault on a female which constitutes a per se denial of his constitutional right to effective assistance of counsel.
IV. Standard of Review
"On appeal, this Court reviews whether a defendant was denied effective assistance of counsel de novo ." State v. Wilson , 236 N.C. App. 472, 475, 762 S.E.2d 894, 896 (2014).
*312 V. State v. Harbison
In State v. Harbison , 315 N.C. 175, 180, 337 S.E.2d 504, 507 (1985), our Supreme Court held that where "counsel admits his client's guilt without first obtaining the client's consent, the client's rights to a fair trial and to put the State to the burden of proof are completely swept away." The Court stated the practical effect is the same as if defense "counsel had entered a plea of guilty without the client's consent." Id.
Our Supreme Court in Harbison requires a defendant's consent to be on the record to allow his counsel's concession of defendant's guilt of one or more of the offenses for which he is charged. An "ineffective assistance of counsel, per se in violation of the Sixth Amendment, [is] established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." Id . at 180, 337 S.E.2d at 507-08.
Defendant argues his trial counsel admitted or conceded his guilt on the misdemeanor charge of assault on a female without his consent and asserts he is entitled to a new trial. The State argues that no Harbison violation occurred because counsel did not expressly concede Defendant's guilt to a charged crime or only admitted one element of a charged offense.
The facts and statements of the present case fall squarely within the rationale of the precedents cited by the State from the Supreme Court of North Carolina and our Court, where Defendant's counsel may have admitted an element of the offense, but he did not expressly concede the crime charged or all other elements of the charged crime.
A. State v. Gainey
In State v. Gainey , 355 N.C. 73, 93, 558 S.E.2d 463, 476 (2002), our Supreme Court rejected the defendant's assignment of error asserting his counsel's argument violated Harbison . The Court recognized that "defense counsel never conceded that defendant was guilty of any crime." Id. Counsel merely noted defendant's involvement in the events surrounding the death of the victim, and argued that "if he's guilty of anything, he's guilty of accessory after the fact. He's guilty of possession of a stolen vehicle." Id. (defendant was charged with murder, kidnapping, and robbery). The Court noted the defendant had "taken defense counsel's statements out of context to form the basis of his claim, and ... fail[ed] to note the consistent theory of the defense that defendant was not guilty." Id . The defendant's Harbison objections were overruled. Id .
*313 B. State v. Fisher
In State v. Fisher , 318 N.C. 512, 350 S.E.2d 334 (1986), the defendant was charged with and tried for first-degree murder. His counsel argued:
His Honor is going to submit to you a verdict form-Madam Clerk, do we have it drawn up yet? Thank you. In which its going to say, Ladies and Gentlemen of the Jury, Do you find the defendant guilty of murder in the first degree and then down below that it's going to say Do you find him guilty of second degree. Second degree is the unlawful killing of a human being with no premeditation and no deliberation but with malice, illwill. You heard Johnny testify, there was malice there and then another possible verdict is going to say Do you find him guilty of voluntary manslaughter. Voluntary manslaughter is the killing of a human being without malice and without premeditation. It's a killing. And it also has not guilty, remember that too. I asked you about that and it's not a not guilty as in some trial I wasn't there, I don't know a darn thing about it, I wasn't there, never been to Silversteen, never will go there. There are some that say, some defenses that say not guilty, that I was *542 there. It's stupid to be there, it don't make mama proud of being there but I was there.
Id. at 533, 350 S.E.2d at 346.
Our Supreme Court held defendant-Fisher was not entitled to a new trial as the counsel's comments did not admit his guilt and counsel's statement did not fall within the line of cases showing a Harbison violation. Id. Even though Fisher's counsel admitted malice, an element of the offense, the Court held that his counsel did not admit his client was guilty to murder as charged. Id.
Our Court has also recognized, "[a]dmission by defense counsel of an element of a crime charged, while still maintaining the defendant's innocence, does not necessarily amount to a Harbison error." See, e.g. , State v. Wilson , 236 N.C. App. 472, 477, 762 S.E.2d 894, 897 (2014) ("Because this purported admission by Defendant's counsel did not refer to either the crime charged or to a lesser-included offense, counsel's statements in this case fall outside of Harbison. At best, an admission by Defendant's trial counsel that Defendant pointed a gun at [victim] while still maintaining Defendant's innocence of attempted first-degree murder, would appear to place counsel's statements within the rule in [State v. ] Fisher , and thus still outside of Harbison. ").
*314 C. State v. Randle
In State v. Randle , 167 N.C. App. 547, 550, 605 S.E.2d 692, 693 (2004), this Court reviewed a defendant's assertion his counsel had implicitly conceded his guilt to a lesser-included offense during closing argument without first obtaining his consent. Defendant's counsel told the jury
they must be entirely convinced of each and every element of the crimes. As serious injury is the essential difference between first and second degree rape, defense counsel then attempted to cast doubt on the seriousness of the mental and physical injuries to [the victim] by arguing [the victim] did not suffer serious injury.
Id. at 549, 605 S.E.2d at 693.
Defendant's counsel also summarized evidence that the defendant had ejaculated on himself. Id. In his final sentence to the jury, defense counsel argued, "Teddy Randle is not guilty of first degree rape. Teddy Randle is not guilty of first degree sexual offense." Id . Our Court distinguished the Randle case from the requirements of Harbison because "counsel in the case at bar never actually admitted the guilt of defendant to any charge, nor did counsel claim that defendant should be found guilty of some offense." Id . at 552, 605 S.E.2d at 695.
D. State v. Maniego
The State also cites State v. Maniego , 163 N.C. App. 676, 683, 594 S.E.2d 242, 246, appeal dismissed , review denied , 358 N.C. 737, 602 S.E.2d 369 (2004), in which the defendant argued his counsel's opening statement violated Harbison . The defendant's counsel stated:
Maniego put himself in the vehicle with Clifford Miller and David Brandt. He put himself driving the vehicle, he put himself at the scene where David Brandt was murdered by Clifford Miller. Through his statements, you'll hear his testimony in this case and he did make three different statements. The first two are incomplete. The third one is the final version. It's the truth about his involvement in these crimes, and it will show to you that he did not aid and abet in the killing of David Brandt by Clifford Miller, nor did he act in concert with Clifford Miller to kill David Brandt. The fact that he's at the scene where these acts occurred is not enough for you to find him guilty of these crimes.
*315 Id. at 684, 594 S.E.2d at 247. This Court held no Harbison violation had occurred to award a new trial because "[a]dmitting a fact is not equivalent to admitting guilt." Id. (citation omitted).
E. Defendant's Cases
A review of cases cited by Defendant, wherein this Court awarded new trials based upon counsels' admissions of their client's guilt in closing arguments, also reflects the fallacy of Defendant's argument. Defendant's assertion that his counsel's statements in closing argument denied his constitutional right to effective counsel under Harbison is clearly not supported by these cases.
*543 In State v. Maready , 205 N.C. App. 1, 4-5, 695 S.E.2d 771, 774-75 (2010), the defendant pled not guilty and was tried before a jury. During his closing argument, defense counsel "conceded that the State had met its burden with respect to the charges of DWI, reckless driving, DWLR and misdemeanor 'larceny and/or possession of stolen property.' " Id. at 4, 695 S.E.2d at 774. Counsel also made the following statements:
We do have the two misdemeanor assaults. ... We don't contest those. They are inclusive in the events that have significant issues associated with them, but we don't contest those. And you can go and make your decisions accordingly. ... [Defendant] holds absolute-holds responsibility for [the death of the victim]. I just argue it's not murder. It's Involuntary Manslaughter.
Id. at 4, 695 S.E.2d at 774-75. This Court found:
Defendant's counsel discussed the elements of involuntary manslaughter with the jury, stating that the second element was "that ... [D]efendant's impaired driving proximately caused the victim's death. That's true. [Defendant's] guilty of that and should be found guilty of that." Defendant's counsel also stated that: "[Defendant's] already admitted to you guilt ... to ... Assault with a Deadly Weapon times two[.]"
At the close of all the evidence and after closing arguments, but before jury instruction, Defendant's counsel again admitted Defendant's guilt to the charges of reckless driving, DWI, DWLR and misdemeanor possession of stolen goods.
Id. at 4-5, 695 S.E.2d at 775. The facts before us are clearly distinguishable from counsel's admissions and statements in Maready . See id.
*316 Defendant also cites State v. Spencer , 218 N.C. App. 267, 275, 720 S.E.2d 901, 906 (2012), wherein the defendant was charged with resisting a public officer and eluding arrest. See N.C. Gen. Stat. § 20-141.5(a) (2017) ("It shall be unlawful for any person to operate a motor vehicle on a street, highway, or public vehicular area while fleeing or attempting to elude a law enforcement officer who is in the lawful performance of his duties.").
The defendant's counsel's closing argument in Spencer admitted the defendant "chose to get behind the wheel after drinking, and he chose to run from the police" and "Officer Battle was already out of the way and he just kept on going, kept running from the police." Spencer , 218 N.C. App. at 275, 720 S.E.2d at 906. This Court held counsel had conceded defendant's guilt to resisting a public officer and to eluding arrest. This Court remanded the case for a determination of whether the defendant had received the proper Harbison warnings. Id.
VI. Crimes Charged
Defendant's other charges of second-degree rape, second-degree sexual offense, and assault by strangulation were submitted to the jury, in addition to the habitual misdemeanor assault charge. The habitual misdemeanor assault premised upon an assault on a female, was the only count the jury convicted defendant of committing. The State's evidence tended to show Defendant had assaulted and struck Ms. Leonard by pushing her down, biting her, and hitting her in the face, causing injuries of scrapes and bruises to her back and fingers, and bleeding and swelling of her lips.
The trial court instructed the jury that in order for them to find Defendant guilty, the State must prove three things beyond a reasonable doubt: (1) Defendant intentionally assaulted the alleged victim by hitting her; (2) the alleged victim was a female; and, (3) Defendant was a male over the age of 18. The elements of habitual misdemeanor assault are: (1) a simple assault or a simple assault and battery or affray; (2) which causes physical injury; and, (3) two or more prior convictions for either misdemeanor or felony assault. N.C. Gen. Stat. § 14-33.2 (2017).
Counsel's closing argument asserted two people had gotten drunk and argued, which escalated into a fight. Counsel stated, "You heard him admit that things got physical. You heard him admit that he did wrong. God knows he did." Counsel's statements relayed and summarized the evidence before *544 the jury, which included both the officer's testimony and Defendant's recorded hour-and-a-half long video interview with officers, shown to the jury. In the video interview, Defendant made the statements *317 that were summarized in counsel's closing argument. Counsel repeated his assertion that Defendant and Ms. Leonard were "[t]wo drunk people [who] got into an argument."
While defense counsel acknowledged the jurors may "dislike Mr. McAllister for injuring Ms. Leonard," he did not state Defendant "assaulted," struck, pushed, bit, or committed any of the specific acts or elements as alleged by the State. Further, counsel did not acknowledge Defendant's age or prior criminal record, both elements of habitual misdemeanor assault.
Our controlling precedents above hold that where counsel admits an element of the offense, but does not admit defendant's guilt of the offense, counsel's statements do not violate Harbison to show a violation of the defendant's Sixth Amendment rights. Counsel's statements before us are not consistent with the facts of either Maready or Spencer , in which per se violations are presumed by counsel's admission of a client's guilt to crimes or all the elements thereof without the client's consent. Fisher , 318 N.C. at 533, 350 S.E.2d at 346 ; Wilson , 236 N.C. App. at 476, 762 S.E.2d at 897.
Here, counsel's conduct was not per se deficient under Harbison to award a new trial.
VII. Strickland v. Washington
Since counsel's statements do not fall within Harbison as per se ineffective assistance, Defendant's claim of ineffective assistance of counsel must be analyzed using the Strickland factors. Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). A defendant's claim of ineffective assistance of counsel has two components:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id.
However, here, Defendant presents no argument tending to show he was prejudiced by counsel's asserted deficient performance to such *318 an extent the outcome of the trial would have been different, but for the alleged errors. Defendant has not demonstrated or argued any prejudice. Defendant is not entitled to a new trial on this issue. Id.
VIII. Motion for Appropriate Relief
Defendant petitioned this Court on 18 October 2018 to issue another writ of certiorari to review on the merits the trial court's denial of his "Motion to Modify and Terminate Sentence for Ineffective Assistance of Counsel," which the trial court treated as a motion for appropriate relief ("MAR"). The trial court found Defendant's motion presented only matters of law and raised no factual issues to require an evidentiary hearing. The court summarily denied defendant's MAR on 27 July 2017.
Defendant had filed his earlier 11 August 2017 petition for writ of certiorari to this Court. On 29 August 2017, this Court allowed Defendant's petition for the limited purpose of reviewing the 22 August 2016 habitual misdemeanor assault judgment entered immediately after defendant's trial.
In his MAR, Defendant asserted, inter alia , his trial counsel had a conflict of interest because his law firm had represented the victim in a similar criminal matter. He asserted claims of ineffective assistance of counsel by his failure to object to alleged false statements of the police, failure to share discovery materials with defendant, and "many constitutional violations."
Defendant failed to provide any supporting affidavits or other evidence beyond the bare assertions in his motion. The General Statutes require a MAR to be supported by affidavit or other documentary evidence.
*545 N.C. Gen. Stat. § 15A-1420(b) (2017). "A defendant who seeks relief by motion for appropriate relief must show the existence of the asserted ground for relief. Relief must be denied unless prejudice appears." N.C. Gen. Stat. § 15A-1420(c)(6) (2017).
Defendant's failure to provide affidavits or other evidence provided no basis for the trial court to review and be able to determine whether an evidentiary hearing would be required. See State v. Payne , 312 N.C. 647, 669, 325 S.E.2d 205, 219 (1985) (Because defendant submitted no supporting affidavits or other documentary evidence with his motion for appropriate relief and the alleged fact was not ascertainable from the record or transcripts submitted, the Court "cannot address the merits of defendant's request for appropriate relief"); State v. Aiken , 73 N.C. App. 487, 501, 326 S.E.2d 919, 927 (1985) ("Since defendant did not comply with G.S. 15A-1420(c)(6), the trial court's summary denial of the motion for appropriate relief was not error.").
*319 Without any factual support, the trial court's summary denial of Defendant's MAR was proper. Defendant's subsequent and pending petition for writ of certiorari filed 17 October 2018 is denied.
IX. Conclusion
This case is controlled by the precedents and holdings in Gainey , Fisher , Randle , and Maniego . Defendant received a fair trial, free from prejudicial errors he preserved and argued. Defendant admitted to his prior assault convictions to support the charge for habitual misdemeanor assault.
There is no error in the jury's verdict or in the judgment entered thereon. Defendant's pending petition for writ of certiorari filed 17 October is denied. It is so ordered.
NO ERROR.
Judge STROUD concurs.
Judge ARROWOOD dissenting with separate opinion.