An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-259

Filed 17 June 2026

Wake County, Nos. 21CR202567-910, 21CR202568-910

STATE OF NORTH CAROLINA

v.

JUAN MANUEL CALVO-HERNANDEZ, Defendant.

Appeal by Defendant from judgment entered 25 March 2024 by Judge Rebecca W. Holt in Wake County Superior Court. Heard in the Court of Appeals 24 September 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Nicholaos G. Vlahos, for the State.*

*Phoebe W. Dee for Defendant-Appellant.*

CARPENTER, Judge.

Juan Manuel Calvo-Hernandez ("Defendant") appeals from judgment entered after a jury found him guilty of one count of first-degree murder and three counts of assault with a deadly weapon with intent to kill inflicting serious injury ("AWDWIKISI"). On appeal, Defendant argues he received ineffective assistance of counsel ("IAC"). After careful review, we discern no error.

## I. Factual & Procedural Background

On 23 March 2021, a Wake County grand jury indicted Defendant for one count of first-degree murder and three counts of AWDWIKISI. Defendant's case proceeded to trial on 18 March 2024, and the evidence tended to show the following.

On 12 February 2021, brothers Eric and Edgar, along with their friends Lesly, Naymir, and Bryan, planned to meet their friends Giovanni and Henry at a bar. When Eric, Edgar, Lesly, Naymir, and Bryan arrived in Naymir's black SUV (the "GMC"), Naymir parked beside Henry's silver sedan (the "Kia"). Once inside, Giovanni noticed Defendant staring or throwing "gang signs[]" in Giovanni's direction.

Around 1:45 a.m., Edgar and Lesly exited the bar, heading toward the GMC. Giovanni and Henry followed, approaching the Kia beside the GMC. After a brief stop at the Kia, Giovanni returned to the front entrance of the bar, where Defendant and the bouncer stood. Moments later, Giovanni shot Defendant, sprinted to the Kia, and sped away with Henry. As Giovanni and Henry departed, Defendant fired multiple rounds at the Kia.

Once Defendant's gunfire ceased, Eric, Naymir, and Bryan exited the bar. Eric, Naymir, and Lesly, who had been standing outside with Edgar, entered the GMC while Edgar and Bryan stood nearby. Defendant then leaned into the GMC, "just put up the gun and started shooting at everybody[]" through the open door at

Eric's seat. Defendant's bullets hit Edgar in the chest, Naymir in the right side and arm, Lesley in the jaw and arm, and Eric in the neck. Eric eventually died.

At trial, the bouncer testified and identified Defendant, who walked with a limp, and Defendant's vehicle in the State's surveillance footage. A corporal with the Cary Police Department also identified Defendant walking with a limp from surveillance footage and Defendant's vehicle from photographs. Further, the State introduced a sales receipt for the Chevy that law enforcement found at Defendant's house. After the State rested, defense counsel moved to dismiss the charges, which the trial court denied.

Seeking to dispute the State's identity evidence, Defendant introduced an eleven-page certified document titled Final Compromise Settlement Agreement ("the Settlement Agreement") from the North Carolina Industrial Commission. According to the Settlement Agreement, Defendant suffered from "a transverse proximally displaced fracture of the right femoral diaphysis and a right humeral fracture[]" that created a "significant amount of permanent partial impairment of his right lower extremity and back[.]" Defense counsel relied on the Settlement Agreement to argue that the severity of Defendant's injuries would have prevented him from running like the shooter depicted in the surveillance footage.

On 25 March 2024, the jury found Defendant guilty on all counts. The trial court sentenced Defendant to life imprisonment without the possibility of parole for first degree murder, to run consecutively with three terms of seventy-two to ninety-

nine months of imprisonment for the AWDWIKISI counts. Defendant entered oral notice of appeal in open court.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2025).

## III. Issue

The sole issue is whether Defendant received IAC.

## IV. Analysis

Defendant argues that defense counsel was ineffective for introducing and relying on the Settlement Agreement because it bolstered the State's identity evidence. We discern no error.

This Court reviews IAC claims de novo. *State v. Wilson*, 236 N.C. App. 472, 475, 762 S.E.2d 894, 896 (2014). When reviewing de novo, this Court " 'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

"[T]his Court engages in a presumption that trial counsel's representation is within the boundaries of acceptable professional conduct." *State v. Roache*, 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004) (citation omitted). Indeed, "[w]e ordinarily do not consider it to be the function of an appellate court to second-guess counsel's tactical decisions[.]" *State v. Lowery*, 318 N.C. 54, 68, 347 S.E.2d 729, 739 (1986).

To establish IAC, a "defendant must satisfy a two part test." *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985). " 'First, the defendant must show that counsel's performance was deficient.' " *Id.* at 562, 324 S.E.2d at 248 (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984)). " 'Second, the defendant must show that the deficient performance prejudiced the defense.' " *Id.* at 562, 324 S.E.2d at 248 (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693).

Here, Defendant has not met his burden in showing IAC. *See id.* at 562, 324 S.E.2d at 248. He did not establish that defense counsel's decision to rely on the Settlement Agreement was objectively unreasonable, *see id.* at 562, 324 S.E.2d at 248, because it was a reasonable strategic choice to dispute the State's identity evidence, *see Lowery*, 318 N.C. at 68, 347 S.E.2d at 739. Moreover, even if counsel was deficient for relying on the Settlement Agreement, Defendant did not show a reasonable probability of a different result. *See Braswell*, 312 N.C. at 562, 324 S.E.2d at 248. Indeed, the evidence of Defendant's guilt was overwhelming due to the surveillance video, eyewitness testimony, photograph of his car, and car sales receipt. Thus, we discern no error and deny Defendant's IAC claim. *See id.* at 562, 324 S.E.2d at 248.

## V. Conclusion

Defendant received a fair trial, free of prejudicial error from defense counsel's representation.

NO ERROR.

Judges TYSON and STADING concur.

Report per Rule 30(e).